NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALI KOURANI,<br><br>          Plaintiff,<br><br>               v.<br><br>MARK P. DENBEAUX and SETON HALL UNIVERSITY SCHOOL OF LAW,<br><br>          Defendants. | Case No. 2:23-cv-01252<br><br>**OPINION**<br><br>August 14, 2024 |

**SEMPER**, District Judge.

Before the Court are Defendant Seton Hall University's ("Seton Hall")[1] motion to dismiss (ECF 22) and Defendant Mark P. Denbeaux's ("Denbeaux" and together with Seton Hall, "Defendants") motion to dismiss (ECF 31) *pro se* Plaintiff Ali Kourani's ("Plaintiff" or "Kourani") Complaint (ECF 1, "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court considered the Plaintiff's Complaint and the parties' submissions, and the motions were decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions are **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff Ali Kourani is a federal inmate. (Compl. ¶ 38.) He brings this action pursuant to 42 U.S.C. § 1983. In 2019, following a trial in the Southern District of New York, Kourani was convicted of seven terrorism-related offenses. (*Id.* ¶ 33; *see* Dkt. No. 1:17-cr-00417-AWH, ECF

---

[1] Improperly pled as "Seton Hall University School of Law."
[2] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

141, "Judgment.") He was sentenced to 480 months in prison. (Compl. ¶ 38.) Kourani appealed from his judgment of conviction, which the Second Circuit Court of Appeals affirmed. *United States v. Kourani*, 6 F.4th 345, 460 (2d Cir. 2021).

The present civil action arises from Kourani's relationship with his former attorney, Denbeaux. (Compl. ¶¶ 7, 14.) Denbeaux is a professor at Seton Hall Law School. (*Id.* ¶ 7.) In late 2016, Kourani was introduced to Denbeaux by one of Denbeaux's clients. (*Id.* ¶ 9.) At the time, Kourani sought assistance with a child custody dispute, and Denbeaux came highly recommended. (*Id.* ¶ 10.) Kourani and Denbeaux stayed in touch. (*Id.*)

In February 2017, Kourani visited Denbeaux at Seton Hall Law School. (*Id.* ¶ 11.) The meeting spurred Kourani's "full trust" in Denbeaux. (*Id.*) At the time of the meeting, Kourani was a "'person of interest' for the U.S. government." (*Id.* ¶ 12.) In the months preceding the meeting between Kourani and Denbeaux, federal agents met with Kourani, "offered him money[,] financial assistance, and other benefits so that [Kourani] would work for them, and when [he] refused[,] they threatened him and intimidated him." (*Id.*)

On a second occasion in 2017, Kourani met with Denbeaux at Seton Hall. (*Id.* ¶ 14.) Kourani "understood very well that attorney/client conversations should be confidential, and Mr. Denbeaux affirmed the same to him." (*Id.*) "Denbeaux emphasized that all of their conversations will remain confidential no matter what and will *never* leave his office." (*Id.* (emphasis in original).) Denbeaux closed the office door, and Kourani sought Denbeaux's legal advice. (*Id.*) Denbeaux advised Kourani to arrange a meeting with the FBI. (*Id.*) At first, Kourani resisted this suggestion, feeling paranoid and anxious based on his prior experiences with the FBI. (*Id.*) Denbeaux allegedly reassured Kourani, "insist[ing]" Kourani follow his advice and "describ[ing] the FBI as the most credible agency in the world." (*Id.*) Denbeaux assured Kourani that such a

2

meeting with the FBI, along with the contents of the meeting, would remain confidential since Kourani was concerned about his safety and the safety of other people, "and also that [Kourani] would remain immune from any criminal charges, and that it was the right thing to do as a patriotic citizen." (*Id.*)

Denbeaux reached out to the FBI to arrange a meeting. (*Id*. ¶ 15.) He relayed Kourani's concerns about other people finding out about his meeting with the FBI. (*Id.*) The FBI indicated that the meeting with Kourani would remain confidential. (*Id.* at Ex. A "March 23, 2017 FBI Report.")

### A.    Meetings with the FBI

On March 23, 2017, Kourani, Denbeaux and the FBI met for the first time. (*Id.*) Over roughly two months in 2017, Kourani, Denbeaux, and the FBI met five times at Seton Hall Law School. (*Id.* ¶ 16.) Kourani asserts the FBI promised him "that nothing he sa[id] w[ould] be used against him, everything he sa[id] w[would] remain confidential, and there w[ould] be no prosecution and other promises that concern[ed] the safety of [Kourani] and his family." (*Id.*) Kourani alleges that during these meetings, Denbeaux did not take notes or record anything. (*Id.* ¶ 17.) Kourani asserts that if Denbeaux had done otherwise, "it could have resulted in exposing the mega lies and the broken promises of the U.S. government." (*Id.*)

Throughout the two months during which Kourani and Denbeaux met with the FBI, Denbeaux reassured Kourani "that he was doing the right thing, that soon he would be rejoined with his kids and family, that he had full immunity from prosecution, and the U.S. government will surely come through on their promises made by the FBI." (*Id.* ¶ 18.) In May 2017, Kourani spoke to Denbeaux about the FBI's "promises." (*Id.* ¶ 19.) Denbeaux allegedly reassured Kourani that if the FBI broke any promises, including revealing Kourani's name and identity, Denbeaux

3

would speak to the media. (*Id.*) Denbeaux reminded Kourani of his connections with media and government officials. (*Id.*)

In June 2017, Kourani was arrested. (*Id.* ¶ 20.) Kourani states that the criminal complaint against him "was based solidly on what was allegedly said during the 5 meetings at Seton Hall Law School." (*Id.*) After his arrest, Kourani called Denbeaux, "who stated clearly to the Plaintiff not to cooperate or talk to those [FBI] agents, said that he was really upset by the government's unexpected actions and that he will reach out to his friend who is a U.S. District Attorney in New Jersey to advocate for him." (*Id.*) Denbeaux also informed Kourani he could no longer represent him, and he would be better off with a public defender. (*Id.*) Thereafter, Denbeaux no longer represented Kourani. (*Id.* ¶¶ 20-21.)

**B.      Criminal Prosecution**

On January 8, 2018, Kourani moved to suppress, among other things, all statements made during his five meetings with the FBI. (Dkt. No. 1:17-cr-00417-AWH, ECF 25.) Denbeaux submitted a declaration in support of the motion. (*Id.* at ECF 28-2; Compl. ¶ 23.) Judge Hellerstein held an evidentiary hearing on the motion, at which Denbeaux testified. (Compl. ¶¶ 24-30.) Kourani alleges Denbeaux testified that the FBI promised confidentiality and that Kourani would not be prosecuted. (*Id.* ¶ 25.) Kourani alleges Denbeaux admitted to not taking notes during the meetings and "that after the Plaintiff's arrest he was really really distressed because it seemed that he must have engaged in some form of malpractice or incompetence." (*Id.* ¶¶ 25-26.) Moreover, Kourani alleges Denbeaux testified that Kourani was a member of the terrorist organization Hizbollah and received training from the organization. (*Id.* ¶¶ 29-30.) Kourani stated that this information, if obtained by Denbeaux, could only have been obtained through Denbeaux's confidential attorney-client communications with Kourani. (*Id.*) Kourani alleges that Denbeaux

twice admitted to being the Government's star witness. (*Id.*) Judge Hellerstein denied Kourani's suppression motion. (Compl. ¶ 31.)

In December 2018, Kourani filed a motion for ineffective assistance of counsel as to Denbeaux. (Dkt. No. 1:17-cr-00417-AWH, ECF 72.) He argued that Denbeaux's failure to obtain a proffer agreement—a failure for which he provided no rationale—fell below a standard of reasonable professional conduct and prejudiced Kourani. (*Id.* at 2-3.) Judge Hellerstein denied the motion, concluding "Defendant and Denbeaux were sophisticated actors who made decisions with the aim of accomplishing specific goals in light of significant risks." (Dkt. No. 1:17-cr-00417-AWH, ECF 78.)

In May 2019, Kourani went to trial. (*See generally* Dkt. No. 1:17-cr-00417-AWH.) A jury convicted Kourani of seven terrorism-related offenses. (Dkt. No. 1:17-cr-00417-AWH, ECF 141, "Judgment.")

## C.    Denbeaux's Letter

Kourani was sentenced in December of 2019. (Compl. ¶ 37.) Kourani asked his trial attorney to ask Denbeaux to write a letter on Kourani's behalf for Judge Hellerstein to consider at sentencing. (*Id.*) Kourani attached Denbeaux's letter as an exhibit to his Complaint. (*Id.* at Ex. B "Denbeaux's Letter.")

In his letter to Judge Hellerstein, Denbeaux explained that in 2017, Kourani reached out to Denbeaux and said he might have information the FBI wanted from him. (*Id.*) He asked Denbeaux to arrange a meeting with the FBI. (*Id.*) Denbeaux alleges that he informed Kourani that such a meeting "was a huge risk." (*Id.*) Upon Kourani's continued request, he arranged the meeting. (*Id.*) Denbeaux wrote,

> I want the Court to know that, as I testified at the suppression hearing, I never
> intended to harm my client and relied upon the FBI agent's word that he was a

gentleman and would honor his commitment to not let anyone in the Lebanese community to know that Ali was speaking to the FBI. And I trusted the other commitments that the agents made as well. I believed that this was a simple trade of assistance by Ali in exchange for immigration/security help for his family from the United States. I had no strategy beyond that and was not trying to trick anyone. . . .

I did not think that written promises were necessary and Ali followed my advice. That was my fault and not his, and I am upset more than you can imagine at how this turned out. . . . Although he recognized the risk, I deeply regret not persuading [Kourani] to give up on his family and to avoid the FBI. But for my arranging the meetings and allowing him to talk freely with the FBI he would not be where he is.

(Compl. at Ex. B.)

### D. Criminal Appeal

Kourani appealed from his judgment of conviction. *United States v. Kourani*, 6 F.4th 345 (2d Cir. 2021). Kourani raised several issues, including whether the district court erred in denying his motion to suppress and whether the district court erred in denying Kourani's motion claiming ineffective assistance of counsel. *Id.* at 448. Regarding Kourani's ineffective assistance motion in connection with the 2017 FBI interviews at Seton Hall, the Second Circuit explained that "it has long been understood that '[a] defendant cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached.'" *Id.* at 453 (quoting *Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992)). A defendant's right to counsel attaches upon the initiation of adversary judicial proceedings. *Kourani*, 6 F.4th at 453. The Second Circuit reasoned that in 2017, when Kourani agreed to meet with the FBI, "his right to counsel had not attached because 'adversary judicial criminal proceedings' against him had not begun." *Id.* On July 27, 2021, The Second Circuit affirmed the district court's judgment of conviction. *Id.* at 460.

### E. The Current Action

On July 13, 2022, Plaintiff filed his Complaint in the United States District Court for the District of Columbia. (ECF 1, Compl.) On January 19, 2023, the case was transferred to this Court.

(ECF 6.) Plaintiff asserts this "civil action, authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States." (Compl. ¶ 1.) Plaintiff's Complaint purports to assert seven counts: (1) breach of attorney-client contract (Compl. ¶ 44); (2) breach of fiduciary duty (*id.* ¶ 45); (3) constructive fraud (*id.* ¶ 46); (4) professional negligence and legal malpractice (*id.* ¶ 47); (5) negligent misrepresentation (*id.* ¶ 48); (6) aiding and abetting in breach of fiduciary duty (*id.* ¶ 49); and (7) intentional infliction of emotional distress. (*Id.* ¶ 50.) On August 22, 2023, Seton Hall filed its motion to dismiss. (ECF 22-3, "Seton Hall Br.") On November 15, 2023, Denbeaux filed his motion to dismiss. (ECF 31-1, "Denbeaux Br.")

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of

a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and places may not be practicable and, instead, Rule 9(b) may be satisfied by "alleg[ing] what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

III.    **ANALYSIS**

A.    **Section 1983**

Kourani initiated this action pursuant to Section 1983. Section 1983 allows a plaintiff to bring a claim for certain violations of his or her constitutional rights.[3] To state a claim for relief under Section 1983, a plaintiff must allege the defendant: (1) violated a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed or caused by a person acting under color of state law. *Mikhaeil v. Santos*, 646 F. App'x 158, 161-62 (3d Cir. 2016) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Here, Kourani makes no allegations pertaining to either requirement for either Defendant. (*See generally* Compl.)

i.    **State Action**

First, as to Denbeaux, Kourani makes no allegations that Denbeaux was acting under color of state law while representing Kourani during the five meetings with the FBI agents. Moreover, "attorneys are not subject to [Section] 1983 claims on the basis that they are officers of the court. This is true whether they are private attorneys or public defenders." *Rushing v. Pennsylvania*, 637 F. App'x 55, 57 (3d Cir. 2016) (citing *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981)). It is axiomatic that Section 1983 claims require state action. *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *8 (D.N.J. June 4, 2014). Accordingly, Kourani fails to state a claim as to Denbeaux.

---

[3] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

Second, as to Seton Hall, Kourani makes no allegations that Seton Hall was acting under color of state law. A private entity like Seton Hall acts under the color state law only where "the private entity has exercised powers that are traditionally the exclusive prerogative of the state[;]" or where "the private party has acted with the help of or in concert with state officials[;]" or where "the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 673 (D.N.J. 2015) (quoting *Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436, 441-442 (E.D. Pa. 1996) (citations and quotations omitted)). Kourani makes no such allegations, and he fails to state a claim as to Seton Hall as well.

### ii.    Violation of a Constitutional Right

Kourani also fails to allege that either Defendant violated his constitutional rights. Rather, he purports to assert several state law claims sounding in negligence and contract relating to Denbeaux's legal representation. To the extent that Plaintiff contends that Denbeaux's "conduct resulted in ineffective assistance of counsel during his criminal proceedings, or the violation of his Fifth, Sixth or Fourteenth Amendment rights, such claims are not actionable under Section 1983." *Tompkins v. Hackett*, No. 20-1141, 2020 U.S. Dist. LEXIS 226978, at *9 (W.D. Pa. Dec. 3, 2020). Again, Kourani's Section 1983 claim must be dismissed.

### B.    *Heck v. Humphrey*

Moreover, to the extent that Kourani's legal malpractice and contract-based claims challenge the constitutionality of his conviction, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court explained as follows:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,  a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

> order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87. Kourani's claims directly implicate his conviction. For example, Kourani alleges "[Defendants] intended to entrap [Kourani] and induce him to make allegedly incriminating statements by refusing to prepare a written agreement/contract with the government, refusing to follow the proper legal channels, refusing to protect [Kourani's] rights, and finally admitting in a declaration that the Defendant was the main reason for causing [Kourani] to be convicted." (Compl. ¶ 47.) As previously noted, Kourani's judgment of conviction was affirmed on direct appeal. It has not been invalidated on a petition for habeas corpus or in any other proceeding. He cannot collaterally attack his sentence via an action for damages. *Hilkevich v. Karpf, Karpf & Cerutti, P.C.*, No. 14-0475, 2014 U.S. Dist. LEXIS 42502, at *12-13 (D.N.J. Mar. 28, 2014). Furthermore, on appeal, the Second Circuit affirmed the ruling that Mr. Denbeaux did not engage in ineffective assistance of counsel. *United States v. Kourani*, 6 F.4th 345, 453 (2d Cir. 2021). Accordingly, pursuant to *Heck*, Plaintiff's claims are **DISMISSED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED.** Plaintiff's Complaint is dismissed without prejudice. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:       Clerk
cc:         Cathy L. Waldor, U.S.M.J.
            Parties